IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | No. C-05-80253 misc JSW (EDL) |
| Plaintiff, | **ORDER DENYING THIRD PARTY'S MOTION TO QUASH SUBPOENA** |
| v. | |
| AMERIDEBT, INC., ET AL., | |
| Defendants. | |

## I. INTRODUCTION

Robb Evans & Associates LLC was appointed as Receiver over the assets of Andris Pukke and DebtWorks, Inc., defendants in an underlying Maryland district court case. Peter Baker is a third party in that case. When the Receiver served a subpoena on Google, his internet service provider, requesting the contents of all of his e-mail accounts, Baker moved to quash. At the January 24, 2006 hearing, Baker and the Receiver appeared through their counsel; Google did not participate in the proceedings. For the reasons stated below, the Court DENIES the Motion to Quash.

## II. FACTUAL BACKGROUND

The Federal Trade Commission filed a lawsuit against Andris Pukke and his company, Ameridebt, Inc., in Maryland district court (Civ. No. PJM 03-3317). On April 20, 2005, the Maryland district court issued a Preliminary Injunction Order with Asset Freeze, Appointment of a Receiver, Repatriation of Assets, and Other Equitable Relief, empowering the Receiver to collect Pukke and Ameridebt assets (the "Assets"). See Declaration of Leo J. Presiado in support of Ex Parte App. to Quash Subpoena ("Presiado Decl."), Ex. 3. In the course of its investigation to locate the Assets, the Receiver discovered information establishing that Pukke owns an indirect ownership

United States District Court
For the Northern District of California

1  interest in a Belize corporation named Dolphin Development Company, Ltd., which in turn owns
2  and develops Sanctuary Bay Estates, a real estate development in Belize.  See Declaration of Lesley
3  Anne Hawes in support of Opp'n to Ex Parte App. to Quash Subpoena ("Hawes Decl.") ¶4, Ex. 1
4  (Declaration of Brick Kane[1]).  Based on its investigation, the Receiver avers that "substantial funds
5  of Receivership entities have been 'loaned' by Pukke-controlled entities to Dolphin Development"
6  and "Dolphin Development is actively selling properties and generating income that is also subject
7  to the Receivership under the Preliminary Injunction Order."  Opp'n to Motion to Quash Subpoena
8  ("Second Opp.") at 4-5.  Checking the Belize corporate registry, the Receiver learned that the other
9  shareholders of Dolphin Development were Peter Baker and Joan and Colin Medhurst.  Hawes
10 Decl., Ex. 1 (Part 2) at Ex. 3.  By letter, the Medhursts confirmed that Dolphin Development was a
11 property developer in Belize and that Pukke funded development expenses for the project through
12 their Florida bank account with an unsecured loan.  Id., Ex. 1 (Part 2) at Ex. 2.  Sanctuary Bay
13 Estates also names "Peter Baker" as the contact person on its website, and invites people to contact
14 him by e-mail at Peterbelize@gmail.com.  Hawes Decl., Ex. 1 (Part 2) at 4.  The Receiver also
15 discovered during a deposition in the underlying case that as late as December 2005, Baker and
16 Pukke were exerting control over Dolphin Development and the Sanctuary Bay website (in violation
17 of the Preliminary Injunction Order).  Second Opp. at 6.
18      In order to track the Assets which it had reason to believe were being funneled through
19 Dolphin Development and/or Sanctuary Bay Estates, the Receiver subpoenaed Google on November
20 1, 2005, requesting "[a]ll documents concerning all Gmail accounts of Baker, including but not
21 limited to the Gmail account of Peterbelize@gmail.com, for the period from January 1, 2003 to
22 present, including but not limited to all e-mails and messages stored in all mailboxes, folders, in-
23 boxes, sent items and deleted items and all links to related web pages contained in such e-mail
24 messages."  Presiado Decl., Ex. 2 at 3.  Google declined to comply with the subpoena on the ground
25 that federal law prohibited Google from disclosing the content of its customers' e-mail
26 communications.  Hawes Decl., Ex. 2.  Baker filed an Ex Parte Application to Quash, arguing that

---

[1] Baker repeatedly urged the Court to disregard the Declaration of Brick Kane because it was unsigned.  At the hearing, the Receiver explained that it had inadvertently omitted the signature page from the declaration, and filed the missing page that same day.  See Docket No. 24.

2

1  the subpoena sought irrelevant information; was abusively drawn and sought private, confidential
2  and privileged information of an individual not a party to the action, including attorney-client
3  communications; that the Receiver should have sought the documents from Baker rather than
4  Google because Google did not have control over the documents; and that the subpoena was not
5  personally served on him, but rather sent by mail to the counsel he had retained to defend him at his
6  deposition at a third party witness.  (Only Baker's objection regarding attorney-client privileged
7  information was supported by any evidence.)  Judge White vacated the ex parte hearing, reset the
8  motion on a regular briefing schedule, and ordered the parties to meet and confer to try to resolve the
9  issue before that time.  When the parties failed to resolve their differences, Judge White referred the
10 Motion to this Court.

11 **II.    DISCUSSION**

12         A.    The Receiver Has Shown That The Information Sought Is Likely To Lead To The
                 Discovery of Admissible Evidence.
13

14         The Receiver contends that Baker and Pukke hold interests in the same Belize corporation,
15 that this corporation funnels Receiverships assets and owns and develops Sanctuary Bay Estates, and
16 that Baker provides the Peterbelize@gmail.com e-mail account as a contact address for Sanctuary
17 Bay Estates.  In his Motion to Quash and at the hearing, Baker argues that the Receiver has not
18 provided any admissible evidence to establish that the "e-mail account is in any way connected to
19 assets over which the Receiver asserts control" or that he is linked in any way with Pukke or Pukke-
20 controlled entities.  Reply at 5-7.  The Court notes that this is not a motion for summary judgment,
21 but a motion to quash.  The Receiver accordingly did not need to establish the link between Baker's
22 e-mail account and Receivership assets conclusively before issuing the subpoena, but rather only
23 had to "take reasonable steps to avoid imposing undue burden or expense on a person subject to that
24 subpoena" and to seek information that appeared to be "reasonably calculated to lead to the
25 discovery of reasonable evidence."  Fed. R. Civ. P. Rules 26(b)(1), 45(c)(1).
26         The Court rejects Baker's argument for two reasons.  First, the Federal Rules allow broad
27 discovery.  Fed. R. Civ. P. 26(b)(1).  The Receiver has shown that Baker likely is aware of Pukke's
28 loans to Dolphin Development, of income generated by Pukke-related properties, and of sales made

by Dolphin Development or Sanctuary Bay Estates. It is reasonable to infer that Baker may have discussed such transactions in his e-mail communications with Pukke or others. It is also reasonable to infer that Baker's e-mail communications may lead the Receiver to other details about Pukke's disposal of assets. The Receiver thus has made a sufficient showing of relevance, and this discovery appears reasonably calculated to lead to the discovery of admissible evidence in this case. Moreover, under the terms of the Preliminary Injunction Order, Pukke is prohibited from engaging in transactions that diminish Receivership Assets. Any person served with the Preliminary Injunction Order also is prohibited from helping Pukke to withdraw, assign, transfer, dissipate, convert, sell or otherwise dispose of Receivership assets. Presiado Decl., Ex. 3 § IX. The Maryland district court empowered the FTC and the Receiver to subpoena documents immediately from any person included in section IX and served with the Preliminary Injunction Order "concerning the nature, location, status, and extent of [Pukke and Ameridebt's] assets." Based on the Receiver's theories and the facts before the Court, Baker's Peterbelize@gmail.com account thus may not only contain documents that lead to the discovery of admissible evidence about "the nature, location, status, and extent" of assets that are the subject to the Receivership, but also about Baker's compliance with the Preliminary Injunction Order. (While certain sections of the Preliminary Injunction Order mention personal service, Section IX does not. Cf. §§ I, V (subjecting "all persons... who receive actual notice of this Order by personal service or otherwise" to the requirements of the Preliminary Injunction Order). The Court thus assumes for purposes of this Motion that Baker is subject to the requirements of Section IX of the Preliminary Injunction Order.)

Second, conspicuously absent from Baker's briefs is any denial that he is linked to the Peterbelize@gmail.com account, Pukke and/or Pukke-controlled entities. On the contrary, Baker relies entirely on formalistic objections and never once attacks the substance of the Receiver's theories or facts. And, ironically, while he argues that the Receiver has not submitted any admissible evidence to support its contentions, the only evidence Baker submitted are declarations by his attorneys that only support his claim that some documents may be protected by the attorney-client privilege, but do not address his other claims about privacy interests. See Presiado Decl. ¶ 8. Moreover, the argument that the Receiver has not sufficiently shown the relevance of the e-mails,

4

1  based primarily on the missing signature page for the Kane Declaration, is disingenuous. That page
2  was omitted by the Receiver's counsel through an inadvertent scanning error and readily corrected.
3  See Docket No. 24. This objection should have been obviated by the parties meeting and conferring
4  prior to the motion. While Baker objects that the Receiver has not provided "foundational facts as to
5  the authenticity or genuineness of any of the documents attached to the statements" (Reply at 6), he
6  never disputes the authenticity of the print-out of the Sanctuary Bay Estates website or the records
7  from the Belize department of corporations showing that he owns shares in Dolphin Development.
8  The Court accordingly overrules Baker's objections to the Hawes and Kane Declarations.

9      B.    The Subpoena, As Limited During the Hearing, Is Not Overbroad Or Unduly Burdensome.

11  Although the Receiver's subpoena calls for "[a]ll documents concerning all Gmail accounts
12  of Baker, including but not limited to the Gmail account of Peterbelize@gmail.com[,]" during the
13  hearing the Receiver limited the request to "all documents concerning the Gmail account of
14  Peterbelize@gmail.com." Baker nonetheless argues that even this request is too broad because it
15  would require him to provide non-responsive documents as well as privileged, confidential, personal
16  and private financial information. See Reply at 4-5. Baker's attorney declares that he used this
17  account to send and receive attorney-client communications with his client, so Baker's contention
18  that the account contains attorney-client privileged e-mails is supported. Presiado Decl. ¶ 8.
19  However, Baker's conclusory argument – made without any supporting declaration – that the
20  account contains non-responsive, confidential, private and personal financial information, is not.
21  See Ex Parte Application to Quash at 5; Reply at 4-5. Baker thus has not shown that this e-mail
22  account contains any personal, confidential or private information beyond, potentially, documents
23  protected by the attorney-client privilege. Nor has Baker shown that the request is unduly
24  burdensome or otherwise unreasonable.

25  Federal Rule of Civil Procedure 45 requires persons to whom a subpoena is directed to
26  produce documents in its possession, custody or control. Baker argues that Google does not have
27  control over his account, but he never argues that Google does not have custody of these documents.
28  Since Google has custody over these documents (and indeed is willing and able to produce them as

5

1 soon as Baker returns a consent form), Baker's argument under Rule 45 that Google is not the
2 proper entity to subpoena for the e-mails is not well taken.  In any case, Baker clearly has control
3 over the account, and he has been aware of the subpoena for months.  See Presiado Decl. ¶¶ 4-7 (the
4 Receiver mailed a copy of the subpoena and Preliminary Injunction Order to Baker's counsel on
5 October 26, 2005, and neither Baker nor his attorney suggest that Baker did not have notice of the
6 documents). At the hearing, the Court asked the parties whether they had any objection to construing
7 the subpoena as being directed to Baker, having Google provide the documents to Baker's counsel
8 to review them for privilege, and then producing them to the Receiver.  They did not object.  This
9 mechanism is equivalent.

## IV. CONCLUSION

11 For the reasons state above, the Court denies Baker's Motion to Quash.  Baker shall
12 immediately give his permission to Google to turn over the documents to his counsel.  Baker's
13 counsel shall review the documents provided by Google and withhold only those documents that are
14 shielded from discovery by the attorney-client privilege.  In addition, if Baker's counsel determines
15 that some documents are truly protected by a privacy privilege (e.g., an e-mail containing irrelevant,
16 purely personal financial information that is in no way connected to Pukke, Dolphin Development or
17 Sanctuary Bay Estates), he may also withhold these documents.  Counsel should err on the side of
18 production.  Within ten business days of receiving the documents from Google, Baker shall provide
19 to the Receiver all non-privileged documents obtained from Google, and a privilege log
20 documenting each document withheld on attorney-client or privacy grounds.  The privilege log shall
21 conform to the rules set forth in the Court's Notice Reference re Discovery, available on the Court's
22 website.  Should the Receiver question whether documents were inappropriately withheld, the Court
23 may
24 //
25 //
26 //
27 //
28 //

6

choose to review all or a subset of randomly-chosen documents in camera, and may order all documents be produced regardless of privilege assertions if it determines that any of the documents reviewed were improperly withheld.

**IT IS SO ORDERED.**

Dated: January 31, 2006

ELIZABETH D. LAPORTE
United States Magistrate Judge