IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

AMERIDEBT, INC., ET AL.,

    Defendants.

No. C 05-80253 misc JSW ( EDL)

**ORDER DENYING THIRD PARTY'S MOTION FOR PROTECTIVE ORDER**

## I. INTRODUCTION

Robb Evans & Associates LLC was appointed as Receiver over the assets of Andris Pukke and DebtWorks, Inc., after Pukke and DebtWorks, Inc. settled with the FTC in a Maryland District Court case. Peter Baker, a third party, manages assets owned in part by Pukke. The Receiver subpoenaed documents and e-mail from Baker in the course of the Receiver's investigation to locate assets belonging to Pukke. After Baker inadvertently produced documents that he contends were privileged, Baker filed this motion for protective order. For the reasons stated below, the Court DENIES the motion for protective order.

## II. FACTUAL BACKGROUND

In January 2006, the FTC settled a deceptive credit counseling and debt case against Andris Pukke, founder of AmeriDebt, Inc., and against a related company owned by Pukke, DebtWorks,

Inc. The settlement agreement required Pukke to give up virtually all of his assets for a consumer redress program for victims of the deception

In April 2005, Robb Evans & Associates LLC was appointed as Receiver by the Maryland District Court with jurisdiction over the case, and was given authority to identify and maintain the assets of Andris Pukke and DebtWorks, Inc. The order of appointment also authorized the Receiver to continue his efforts to locate additional assets to fund a settlement for the victims. These assets, termed "Receivership Property" are generally defined as "any Assets, wherever located, that are (1) owned, controlled or held by or for the benefit of Pukke or DebtWorks, in whole or in part; (2) in the actual or constructive possession of Pukke or DebtWorks; (3) held by an agent of Pukke or DebtWorks … ; or (4) owned, controlled or held by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned or controlled by either Pukke or DebtWorks … ." Preliminary Injunction Order, Federal Trade Commission v. AmeriDebt, Inc., et al., No. PJM 03-3317 (D. Md. filed April 20, 2005) (Doc. No. 122), at 4.

In the course of its investigation to locate such assets, the Receiver discovered that Pukke owns an indirect 60% ownership in a Belize Corporation named Dolphin Development Company, Ltd., which in turn is the owner and developer of Sanctuary Bay Estates, a real estate development company in Belize. See Nov. 9, 2005 Hawes Decl. (Doc. No. 10), Ex. 1 (Kane Decl. in Opp'n to Mot. for Instructions and for Interpretation and Enforcement of Preliminary Injunction Order, Federal Trade Commission v. AmeriDebt, Inc., et al., No. PJM 03-3317 (D. Md. filed Aug. 15, 2005) (Doc. no. 262)) ("Aug. 15, 2005 Kane Decl.") at ¶¶ 4-5. According to the Receiver, "[r]eceivership records demonstrate that substantial funds of receivership entities have been 'loaned' by Pukke-controlled entities to Dolphin Development" and that "Dolphin Development is actively selling properties and generating income that is also subject to the receivership under the Preliminary Injunction Order." Opp'n to Mot. to Quash (Doc. No. 16), at 4-5. Sanctuary Bay Estates named "Peter Baker" as the contact person on its website, and his e-mail address as Peterbelize@gmail.com. Aug. 15, 2005 Kane Decl. Ex. 1. The Receiver also learned that Baker was a 15% shareholder in Dolphin Development. Id., Exs. 2-3. Accordingly, the Receiver served a

2

subpoena on Baker's e-mail provider to discover more information about Pukke's assets, including Dolphin Development and Sanctuary Bay Estates.

Baker filed a motion to quash the subpoena, arguing that the subpoena sought irrelevant, private, confidential and privileged information of an individual not a party to the action, including attorney-client communications. The Court disagreed that the information was irrelevant, and denied the motion to quash. On February 1, 2006, the Court ordered Baker to give his e-mail provider permission to produce documents responsive to a subpoena. See February 1, 2006 Order (Doc. No. 27). In order to shield any documents protected by the attorney-client privilege, the Court ordered the provider to produce the documents to Baker's counsel, who would review the correspondence before producing it to the Receiver. Although the Court concluded that Baker had not shown that the e-mail account at issue was likely to contain personal information, the Court nonetheless crafted an exception designed to protect any truly private material:

> Baker's counsel shall review the documents provided by Google and withhold only those documents that are shielded from discovery by the attorney-client privilege. In addition, if Baker's counsel determines that some documents are truly protected by a privacy privilege (e.g., an e-mail containing irrelevant, purely personal financial information that is in no way connected to Pukke, Dolphin Development or Sanctuary Bay Estates), he may also withhold these documents. Counsel should err on the side of production. . . . Should the Receiver question whether documents were inappropriately withheld, the Court may choose to review all or a subset of randomly-chosen documents in camera, and may order all documents be produced regardless of privilege assertions if it determines that any of the documents reviewed were improperly withheld.

February 1, 2006 Order at 3.

Baker began producing documents on April 12, 2006. On May 1, 2006 he inadvertently produced e-mails that he contends are private and/or privileged. On June 1, 2006, the Receiver informed Baker that some of the e=mails he produced appeared to be listed on his privilege log. On June 23, 2006, Baker confirmed that the e-mails listed on his privilege log had been inadvertently produced, and demanded their return. On June 26 and June 29, 2006, the Receiver rejected Baker's privacy and privilege claims. On July 10, 2006, the Receiver – who had reviewed the documents before discovering they were listed on the privilege log – returned the disks containing Baker's e-mail production, retaining copies of all documents except for attorney client communications

3

between Baker and his attorneys at Russ, Miliband & Smith, who represented Baker in his efforts to quash the subpoena. That same day, in the Maryland District Court, the Receiver included, under seal, one of the e-mails that appeared on Baker's privilege log in support of the Receiver's opposition to a motion to quash a subpoena served on agents for another newly-discovered corporate asset. On July 19, 2006, the Receiver informed Baker that unless he moved for a protective order within fourteen days, the Receiver would assume that Baker had waived any privilege or privacy claims as to the inadvertently produced e-mails.

On August 3, 2006, Baker retained new counsel. Baker's new counsel and the Receiver engaged in further meet and confer, but neither party modified its position regarding the validity or waiver of Baker's privilege and privacy claims. On August 17, 2006, the Receiver reiterated its belief that Mr. Baker had waived any right to argue that the inadvertently produced documents should be returned on privilege or privacy grounds and explicitly told Baker that the Receiver would not refrain from reviewing or using the documents, and would in fact use some of the documents in a motion for contempt that the Receiver planned to file before the end of August.

Finally, on August 22, 2006 – almost four months after the e-mails were inadvertently produced, and almost three months after first learning of his mistake – Baker applied ex parte for an order shortening time to move for a protective order requesting that the Court compel the Receiver to return all the documents Baker identified in his privilege log and that the Court sanction the Receiver for its failure to do so earlier. The Court granted the motion to shorten time, and held a hearing on September 12, 2006.

## III.    DISCUSSION

### A.    The Receiver returned all communications between Baker and his attorneys at Rus, Miliband & Smith.

The Receiver returned all communications between Baker and his attorneys at Russ, Miliband & Smith. See Aug. 15, 2005 Kane Decl. ¶ 5. Accordingly, these communications are not at issue in this motion.

4

**B.     The Receiver need not return the communications between Baker and attorney Rodwell Williams because the Receiver holds the attorney-client privilege for Receivership Property**.

It appears from the e-mails the Receiver attached to his Opposition that Baker continues to claim the privilege for communications between Rodwell Williams, an attorney, and himself and/or persons acting on behalf of Dolphin Development or other Receivership property, both before and after the Maryland District Court appointed the Receiver as the exclusive manager of Receivership. See, e.g., Opp'n Exs. 5, 11, 27, 29, 31. There is no evidence that Williams represents Baker in the current discovery disputes, or that Williams represented Baker in any matter related to the FTC's action against Pukke. On the contrary, these e-mails establish that Williams was purportedly acting as the attorney for Dolphin Development and drafted documents that would allow Dolphin Development to conduct its business and sell property – property that it no longer legally controlled due to the appointment of the Receiver.

In its February 1, 2006 Order, this Court concluded that Dolphin Development was Receivership Property. Accordingly, Baker may not assert the attorney-client privilege for communications between himself and counsel for Dolphin Development that occurred after appointment of the Receiver because the Receiver holds that privilege for all Receivership Property. See Securities and Exchange Comm. v. Marker, 2006 WL 288426, *3 (M.D.N.C. Feb. 6, 2006) (receiver succeeds to rights of management with regard to company in receivership, including right to control attorney-client privilege, although receiver does not control individual attorney-client privilege of the company's former owner where attorney who represented company in receivership also jointly represented former owner in several underlying fraud actions). Marker adopted the reasoning of Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343, 352-53 (1986) (the role of a bankruptcy trustee was analogous to that of management of a solvent corporation and thus the trustee had the power to waive the attorney-client privilege of the corporation in bankruptcy with regard to prebankruptcy communications). Unlike in Marker, there are no similar joint-representation concerns here. Accordingly, the Receiver holds the attorney-client privilege for Dolphin Development and communications made on behalf of Dolphin Development with attorney Williams since the Receiver's appointment. The Receiver also holds the attorney-client privilege for

5

Sanctuary Bay Estates, Sittee River Wildlife Reserve and Triton.  See Aug. 15, 2005 Kane Decl., Ex. 3.  Further, the Receiver holds the attorney-client privilege for these entities even for communications occurring before the Receiver was appointed.  See Weintraub, 471 U.S. at 353.

Ignoring the Court's prior finding that Dolphin Development is Receivership property, see February 1, 2006 Order, Baker tries to distance Pukke from Dolphin Development and the Receiver's right to waive the privilege in lieu of Pukke.  Baker argues that the Receiver has no interest in Dolphin Development because Pukke owned only 60%, not 100%, and because Pukke is not a director of Dolphin Development.  Pocket Brief (Doc. No. 69), at 3.  This argument is specious at best.  The Court takes judicial notice of information from the Belize Registry that Pukke is a director of Dolphin Development.  Aug. 15, 2005 Kane Decl., Ex. 3.   The Receiver, who has succeeded to all Pukke's rights and privileges with regard to Pukke's assets, has accordingly succeeded to the privilege held by Pukke as agent for Dolphin Development.  Therefore, Baker cannot assert the corporate attorney-client privilege against the Receiver with regard to communications regarding Dolphin Development, Sanctuary Bay Estates, Sittee River Wildlife Reserve, Triton or other Receivership Assets.

**C.    Baker has waived the attorney-client and privacy privileges through his delay in seeking to protect the documents after the Receiver notified him of their production.**

Alternatively, Baker has waived the attorney-client and/or privacy privilege as to these communications.  The February 1, 2006 Order denying Baker's motion to quash required Baker to produce any communications not protected by the attorney-client privilege which were arguably relevant to Receivership Assets.  Baker produced documents to the Receiver beginning April 12, 2006 through May 25, 2006.  Aug. 15, 2005 Kane Decl., ¶4.  The Receiver did not receive the first privilege log until May 8, 2005, after he already had reviewed all documents produced by that date.  Id.  After receiving the privilege log, and noticing that some of the previously produced items were listed there, the Receiver asked Baker to confirm whether the production was intentional and how he wanted to handle the inadvertently produced e-mails.  See MPA (Doc. No. 55), at Ex. 7 (June 1, 2006 letter from Receiver informing Baker that Baker had inadvertently produced attorney-client

6

communications with his counsel Rus, Miliband & Smith, P.C., and asking Baker's counsel to "call me to discuss how you wish for us to handle those documents … ." The Receiver further explained that "it appears that most or all of the other items on your privilege logs were also produced. I am unable to tell, based on the production and the letters that accompany the production, whether the production of these other documents was intentional. Based upon the review of those documents . . . the other documents . . . do not appear to be protectable").

Baker did not answer this letter until June 23, 2006 – more than three weeks after the Receiver raised the potential inadvertent disclosure. Id., Ex. 8. Baker did not move for a protective order for an additional two months, despite the Receiver's warning that it would not refrain from reviewing and using these documents in litigation. Baker's delay in redressing the problem, and his lack of due care in producing the documents initially, support a finding of waiver.

Baker nonetheless urges the Court to uphold the privilege, arguing that he took appropriate steps to preserve the privilege after discovering the inadvertent production. The Court is not persuaded by these arguments. Indeed, Bagley v. TRW, Inc., 204 F.R.D. 170 (C.D. Cal. 2001), which Baker cites in his moving papers, supports a finding of waiver. In Bagley, the defendant had inadvertently produced 200 of the 300 documents it had designated as attorney client privileged in a production of approximately 200,000 documents. Months later, the plaintiff notified defendant of its error, and the very next day, the defendant contacted plaintiff to rectify the situation. Although the plaintiff refused to return the documents, the parties agreed to segregate and seal the documents pending judicial resolution, if necessary. Three years later, the defendant filed a motion for protective order. In order to determine whether the defendant had waived any attorney-client objections, the Bagley Court applied a totality of the circumstances test, examining the reasonableness of the precautions taken to prevent inadvertent disclosure, the scope of the production, the time it took to rectify the error, the extent of the disclosure, and the overriding issue of fairness. The court concluded that defendant had taken adequate precautions to prevent disclosure; that by calling the plaintiff the day after discovering the inadvertent disclosure, the defendant had scored "a point," but that defendant's failure to discover its mistake initially and then its subsequent failure to get a handle on its document production weighed against it; that 200,000

7

documents is a large production; that 200 inadvertently produced documents was extensive (although maybe not so extensive when expressed as a ratio of all documents produced); and that the attorney client privilege was one of the oldest recognized privileges and should not be ignored, and thus fairness weighed in favor of the defendant, especially where the parties had agreed not to use the documents in the case and thus the plaintiff could not be said to have relied upon the documents to develop his case.

The facts in this case are very different. Baker argues that his attorneys took "great care" to prevent inadvertent disclosure, and that the scope of the production was "massive" (7,000 e-mails). See Aug. 22, 2006 Presiado Decl. ¶¶ 10-11. The Court disagrees with these assessments. The fact that Baker actually produced all his privileged information suggests that the attorneys did not take great care, and 7,000 documents, while significant, is not "massive." At most, the second factor weighs slightly in Baker's favor. The next two factors strongly weigh in the Receiver's favor: Baker took three weeks to even respond to the Receiver's letter revealing that documents identified on the privilege log had been produced, and three months to file a motion for protective order; and Baker produced every single one of the documents identified on his privilege log, rather than simply overlooking a handful of private or privileged documents. The Court concludes that Baker has waived the attorney-client privilege and/or any privacy privilege – to the extent these privileges existed – as a result of his undue delay and lack of due care with respect to purportedly privileged documents.

> **D. Baker also waived any privacy rights by improperly withholding non-private documents that on their face fall outside the scope of the Court's February 1, 2006 Order allowing withholding of "truly private" information only.**

The February 1, 2006 Order allowed Baker to withhold from production private, irrelevant information. The Court emphasized that this exclusion was for information "truly protected by a privacy privilege (e.g., an e-mail containing irrelevant, purely personal financial information that is in no way connected to Pukke, Dolphin Development or Sanctuary Bay Estates)." The Court stressed that the exclusion for "truly private" information was intended to be narrow and to allow Baker to withhold only entirely irrelevant documents. Baker instead misused this narrow exclusion

8

to shield responsive, non-privileged documents from discovery. The Court generally agrees with the Receiver's characterization of Exhibits 1-32, and will not address here in further detail how each of these exhibits falls within the scope of the February 1, 2006 Order. Based on the Court's review of these documents, it is apparent that Baker abused the Court's permission to withhold "truly private" information to instead withhold documents that were clearly and very directly connected to Pukke, Dolphin Development and Sanctuary Bay Estates. Baker used the privilege log to withhold as private relevant documents that were not privileged, flouting the Court's ruling and hiding damaging information from the Receiver. This information is directly relevant to the matter, and should have been produced to the Receiver in the first instance.

Furthermore, the cases that Baker cites do not support his argument that his allegedly private documents should be afforded the same high level of protection as documents protected by attorney-client privilege. Black v. City and County of Honolulu, 112 F. Supp. 2d 1041 (D. Haw. 2000), was a sexual harassment case where the plaintiff sued a police department for, among other things, covert surveillance which she did not consent to. In Veilleux v. NBC, 8 F. Supp. 2d 23 (D. Me. 1998), an interviewee sued a television company after it broadcast a segment in which he admitted to testing positive for drugs. The court held that, although discussion of the matter with an interviewer might be evidence of implied consent to publicize, the interviewee's repeated and clear requests not to publicize information about the drug test and the interviewer's agreement to treat the disclosure as confidential established a triable issue of fact as to consent. Neither of these cases addresses whether an individual waives any privacy interest by inadvertently producing documents in the course of litigation. Even if the same exacting standards applied, the Court would still conclude that Baker has waived any privacy privilege through disclosure.

Mr. Baker and his attorneys were on notice that the Court contemplated denying him any privacy protection if he over-designated documents on his privilege log. The Court warned Mr. Baker that, in the event that the Receiver suspected that some documents had been improperly withheld, the Receiver could inform the Court and the Court might choose to inspect some or all of the purportedly privileged documents and order production of all documents for which privileged was claimed if it determined that Baker had improperly withheld any documents. The documents

9

that Baker claims to have inadvertently produced establish that Baker has engaged in just such abuse.

### E. The Receiver did not engage in sanctionable behavior by reviewing and retaining documents that did not appear privileged.

Rather than proffering any justification for his decision to withhold these obviously relevant e-mails, Baker seems to believe that the best defense is a good offense, and accuses the Receiver of breaching its ethical obligations by refusing to return the e-mails. See MPA at 22-23 (quoting ABA Committee on Ethics and Professional Responsibility). This is not a good offense. If anyone engaged in sanctionable behavior, it is Baker. First, Baker's cover letters repeatedly informed the Receiver that he had decided to produce documents that contained private information. See MPA Exs. 4-6 ("the disk contains additional e-mails which Mr. Baker has decided to produce *despite their private nature*"). Thus, the presence of private e-mails would not, by itself, suggest a production error. Second, the Receiver reviewed the e-mails before receiving a privilege log, and could not have determined that the e-mails were purportedly privileged until seeing that they were listed in the privilege log, because on their face they did not appear to be "purely private." See Aug. 29, 2006 Caris Decl. ¶ 3 (privilege log received May 8, 2006); Aug. 29, 2006 Kane Decl., ¶ 4 (received privilege log after reviewed Baker's documents); MPA Exs. 4-5 (privilege logs). To the contrary, most of the e-mails mention Dolphin Development or other Receivership assets. See Opp'n Ex. 1-32. Thus, unlike the situations contemplated by the ABA in its Ethics Opinions, these documents were not obviously privileged or confidential.

## III. CONCLUSION

For the reasons stated above, the Court denies Baker's motion for protective order and denies the Receiver's application to file documents under seal that are not privileged under this Order. The Receiver may file a new application to seal those documents, if any, still protected by the attorney-client privilege. Otherwise, the Receiver shall electronically file all documents related to this motion.

10

**IT IS SO ORDERED.**

Dated:  October 5, 2006

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge